**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ENTERTAINMENT BY J & J, INC.** | |
|      **Plaintiff,** | |
|      **v.** | |
| **BRIDGES CAFE** | Civil Action No.  02-03006(JF) |
| **CORPORATE DEFENDANT** | |
| **d/b/a BRIDGES CAFE** | |
|      **and** | |
| **KEVIN KONIECZNY** | |
|      **Defendants.** | |

## O R D E R

**AND NOW**, this                    day of 2002, upon consideration of Defendant, Bridges Cafe and Kevin Konieczny's Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) and any response thereto:

**IT IS** hereby **ORDERED** and **DECREED** that Defendants, Bridges Cafe and Kevin Konieczny's Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) is **GRANTED** and Plaintiff's claims are dismissed, with prejudice.

BY THE COURT:

_____
FULLAM, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ENTERTAINMENT BY J & J, INC.

      Plaintiff,

    v.

BRIDGES CAFE
CORPORATE DEFENDANT          Civil Action No.  02-03006(JF)
d/b/a BRIDGES CAFE

    and

KEVIN KONIECZNY

    Defendants.

**MOTION OF DEFENDANTS, BRIDGES CAFE AND KEVIN KONIECZNY**
**TO DISMISS PLAINTIFF, ENTERTAINMENT BY J & J, INC.'S COMPLAINT**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**
**PURSUANT TO F.R.C.P. 12(B)(6)**

      **AND NOW**, comes Defendants, Bridges Cafe and Kevin Konieczny Motion to Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

      In support of Defendants' Motion to Dismiss Plaintiff's Complaint, Defendant will rely on the arguments in the accompanying memorandum of law and would incorporate same.

      **WHEREFORE,** for all of the foregoing reasons, Defendants, Bridges Cafe and Kevin Konieczny request this Honorable Court grant Defendants' Motion to Dismiss Plaintiff's Complaint.

**GALERMAN TABAKIN & SOBEL**


BY: _____
    JONATHAN J. SOBEL, ESQ.
    I.D. # 76428
    1420 Walnut Street, Suite 1420
    Philadelphia, PA 19102
    (215) 717-1100
    (215) 717-1420

    Attorney for Defendants

Dated:      November 27, 2002

2

**VERIFICATION**

I, JONATHAN J. SOBEL,I, JONATHAN J. SOBEL, ESQUIRE, verify that the statements made in t

**MOTIONMOTION TOMOTION TO DISMISS PURSUANTMOTION TO DISMISS PURSUANT TO F.**

mymy knowledge, information and belief. my knowledge, information and belief.  I understand that the stateme

toto the penalties of 18 Pa. C.S.A. §to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification t

11 of the Federal Rules of Civil Procedure.


_____
JONATHAN J. SOBEL, ESQUIRE

Date:  November 27, 2002

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ENTERTAINMENT BY J & J, INC.

      **Plaintiff,**

  v.

BRIDGES CAFE                 Civil Action No.  02-03006(JF)
CORPORATE DEFENDANT
d/b/a BRIDGES CAFE

    **and**

KEVIN KONIECZNY

    **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS, BRIDGES CAFE AND KEVIN KONIECZNY
TO DISMISS PLAINTIFF, ENTERTAINMENT BY J & J, INC.'S
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH
RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. 12(B)(6)**

## I.    FACTUAL BACKGROUND

The instant matter arises out of a dispute over the publication of a closed-circuit boxing match which was allegedly telecast on November 11, 2000 by Defendants.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 14.).  Defendant is Bridges Cafe which is located at 5136 Torresdale Avenue, Philadelphia, PA.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 5.).  Defendant, Kevin Konieczny is allegedly the owner *or* manager at Bridges Cafe.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 6.)(emphasis added).  The fight involved Lennox Lewis and David Tua from Las Vegas Nevada.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 7.).

It is averred that Plaintiff entered into a license agreement for the purpose of distributing for a commercial gain, the closed-circuit broadcast of the event to various business establishments throughout Pennsylvania.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 8.).  Plaintiff avers that in order to show the fight, an establishment had to be contractually authorized to do so by Plaintiff.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 9.).

It is averred that Defendants showed the fight in violation of the licensing agreement between Plaintiff and other establishments when they did not pay for the fight and were not permitted to do so.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 14.).  As a result, Plaintiff claims they suffered financial injuries and damages.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 19.).  They seek approximately $170,000.00 and attorney's fees for prosecuting this case.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ Ad Damnum Clause.).

In its Complaint, Plaintiff does not indicate the manner in which the fight was being distributed or whether Defendants published the cable programming directly from the coaxial cable system or from the satellite transmission.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002.).

## II.    PROCEDURAL BACKGROUND

On or about May 21, 2002, Plaintiff, Entertainment by J & J, Inc. filed a Complaint in the United States District Court for the Eastern District of Pennsylvania.  (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002.).  On or about June 17, 2002, Defendants, Bridges Cafe and Kevin Konieczny were served with a copy of the Summons and Complaint.[1]  The

---

[1]Although specifically requested to do so, Plaintiff has failed to confirm service upon Defendants.  In a letter dated June 17, 2002, counsel for defendant noted that "we have been retained to represent Bridge's Cafe and Kevin Konieczny.  Would you kindly confirm that service has been effectuated and provide me with proof of same."  (See Exhibit "B" - Correspondence from Jonathan J. Sobel, Esquire to Ronald Harper, Esquire, Jun. 17, 2002.).  It was not until counsel for Defendants scanned the docket they learned service had been effectuated.

Complaint alleges violations of the Communications Act of 1934, specifically 47 U.S.C. §§ 605 & 553. There are two counts to the Complaint including violation of section 605 and section 553. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002.).

On or about July 8, 2002, Defendant files the instant Motion to Dismiss, pursuant to F.R.C.P. 12(b)(6) for failing to state a claim upon which relief can be granted.

## III.    MOTION TO DISMISS:  THE APPLICABLE STANDARD

According to the Federal Rules of Civil Procedure:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue,  (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.  A motion making any of these defenses shall be made before pleading if a further pleading is permitted.  No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.  If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief.  If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

F.R.C.P. 12(b)(emphasis added).  A motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the Complaint.  Conley v. Gibson, 355 U.S. 41 (1957).  A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In considering a Motion to Dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party.

3

Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). When considering a Motion to Dismiss for Failure to State a Claim Upon Which Relief can be granted, a court must "accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." Allah v. Seiverling, 229 F.3d 200, 223 (3d Cir. 2000). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief can be granted. Morse v. Lower Merion School District, 132 F.3d 200 902, 906 (3d Cir. 1997). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." Klein v. General Nutrition Cos., Inc., 186 F.3d 338, 342 (3d Cir. 1999).

## IV.    DISCUSSION

### A.    SERVICE WAS IMPROPER UPON DEFENDANT, KEVIN KONIECZNY

Defendant, Kevin Konieczny contends he was improperly and that service of process should be quashed. In as much as Defendants' have challenged the sufficiency of service of process, "the party on whose behalf service was made bears the burden of establishing the validity of service." See Villanova v. Solow, 1998 U.S. Dist. LEXIS 14686 (E.D. Pa. 1998). Moreover, "factual contentions regarding the manner in which service was executed may be made through affidavits, depositions and oral testimony. Id. at *1.

Pursuant to F.R.C.P. 4(e), entitled "Service Upon Individual Within a Judicial District of the United States",

> [u]nless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
> (1)    pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2)    by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by

4

delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

F.R.C.P. 4(e).

### 1.    The Law of the Commonwealth of Pennsylvania.

According to F.R.C.P. 4(e)(1), this matter arose in the Eastern District of Pennsylvania.  Defendant, Kevin Konieczny is an adult individual who resides in the Eastern District of Pennsylvania.

The Pennsylvania Rules of Civil Procedure provide the method of proper service upon individuals, etc.  According to Pa. R.C.P. 402(a):

Original process may be served:

(1)    by handing a copy to the defendant; or

(2)    by handing a copy

(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

(ii)    at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

(iii)    at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa. R.C.P. 402(a).

A careful reading of the case-law which has developed on the issue at bar reveals that service was, at all times, improper on this defendant.

### a.    Office / Usual Place of Business - Agent / Person - Time Being in Charge.

The rules allow service at an "individual" Defendant's office and/or place of business. Courts have held that service upon officers in a corporation is proper at the place of business of the corporation.  See Goodman v. Moyer, 523 F. Supp. 33 (E.D. Pa. 1981).  There is no

5

evidence to indicate that the individual who accepted service is an agent of the Defendant or in charge of the Cafe.

In Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 486 (3d Cir. 1993), the court held that "for purposes of Pennsylvania rule governing service of process, 'person for time being in charge' of any office or usual place of business of defendants must either be individual with some direct connection to party to be served or one whom process server determines to be authorized, based upon representation of authority, as evidenced by affidavit of service."

The Superior Court of Pennsylvania has found that in cases regarding "office / usual place of business", the defendants must have proprietary responsibility and control over business than that possessed by the average employee. See Slater v. Goldberg, 266 Pa. Super. 52, 402 A.2d 1073 (1979). Importantly, in Slater, the individual defendants were shareholders, officers and directors of the corporation. The court found that they had a sufficient interest which would allow service to be made upon them and to ensure that service was received and accepted. Id.

Accordingly, Defendant, Konieczny argues that service against him should be quashed as it has not been shown that the individual who was served was an agent who was authorized to accept service on his behalf. Defendant, Konieczny submits that no one is truly authorized to accept service on his behalf. Without the benefit of the "affidavit of service" which was requested, it is Defendant, Konieczny's position that he was improperly served. See note 1, supra.[2]

> ### 2.    Federal Law of Service of Process.

---

[2]Additionally, it is submitted that Plaintiff's claims against Mr. Konieczny should be dismissed as it is unclear how he could be individually and/or personally liable for the alleged claims in Plaintiff's Complaint. If, as Plaintiff claims that Bridges Cafe is a corporation, it has failed to aver the corporate veil should be pierced in order to establish a direct cause of action against the individual defendant. Accordingly, Defendant, Kevin Konieczny respectfully requests the claims against him, individually and personally, should be dismissed.

F.R.C.P. 4(e)(2) authorizes service *"by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."* Id. (emphasis added).

Admittedly, there is a dearth of authority with regard to Rule 4(e)(2) as it is a relatively newer rule, which was changed in 1993. Previously, the Rule had been located at 4(d)(2), and authorized the "use of familiar methods of personal and abode service or service on an authorized agent in any judicial district." See 1993 Advisory Committee Notes, at 4(e). Therefore, based upon this paucity, the issue of whether service was effectuated is falls under the rubric of 4(e)(1) and its progeny. There appears to be no indication why the analysis under the federal rule, i.e., 4(e)(2) would differ from the analysis under the state rule, i.e., 4(e)(1), as applied through Pa. R.C.P. 402(a)(2)(iii). Accordingly, Defendant would rely on the arguments above in support of dismissal of Defendants' Motion to Quash Service.

## B.  PLAINTIFF'S CLAIMS UNDER SECTIONS 605 and 553 MUST FAIL.

### 1.  Plaintiff is not entitled to Relief Under 47 U.S.C.S. §§ 605 and 553.

In its Complaint, Plaintiff seeks damages for violations of 47 U.S.C.S. § 605 and violations of 47 U.S.C.S. § 553. In reviewing the applicable case-law, it is clear that there is no right of recovery under section 605.

Pursuant to 47 U.S.C.S. § 605(a):

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not

7

> being entitled thereto shall receive or assist in receiving any
> interstate or foreign communication by radio and use such
> communication (or any information therein contained) for his
> own benefit or for the benefit of another not entitled thereto.  No
> person having received any intercepted radio communication or
> having become acquainted with the contents, substance, purport,
> effect or meaning of such communication (or any part thereof)
> knowing that such communication was intercepted, shall divulge
> or publish the existence, contents, substance, purport, effect, or
> meaning of such communication (or any part thereof) or use such
> communication (or any information therein contained) for his
> own benefit or for the benefit of another not entitled thereto.

Pursuant to 47 U.S.C.S. § 553(a)(1):

> No person shall intercept or receive or assist in intercepting or
> receiving any communications offered over a cable system,
> unless specifically authorized to do so by a cable operator or as
> may otherwise specifically authorized by law.

There are a number of cases which discuss whether a party may pursue a claim under both sections of the statute, contemporaneously.  The United States Court of Appeals for the Third Circuit in the recent decision in <u>TKR Cable Company v. Cable City Corporation, et al.</u>, 267 F.3d 196 (3d Cir. 2001), found that claims under section 605 must fail and the claims were governed solely by section 553.  Importantly, the court held that "a cable television descrambler does not facilitate the interception of 'communications by radio' and therefore the statutory damages available under § 605 do not apply here."  <u>Id.</u> at 197.

<u>TKR Cable</u> involved the sale of cable television descramblers brought by a cable company under sections 553 and 605.  The Court conducted an exhaustive discussion on the legislative history surrounding § 605.  In Part "A" of its opinion, the court found that "by transferring authority over wire communications to the provide of the Crime Control Act, Congress removed coverage of wire communications from § 605 and thereby excluded activities such as [Defendant's] from that provision's scope. . . .  We believe, therefore, that § 605 does not reach [Defendant's] conduct."  <u>Id.</u> at 202.

Part "B" of the Court's opinion addresses § 553 which was introduced in 1984 in response to cable piracy.  Again, the court examines the legislative history surrounding its

passage, including references to debates on the house floor. "The legislative history to § 553 shows that Congress specifically designed the provision to combat decoder box piracy of satellite-delivered cable services." Id. at 205. Further, "it is clear that Congress enacted § 553 primarily to address the vast array of satellite-initiated cable transmissions, rather than the obscure realm of ground initiated transmissions." Id. Finally, the Court, in Part "B" of the opinion noted that "Congress clearly enacted § 553 with the primary purpose of addressing satellite-initiated cable transmissions. Congress created § 553 to address an enforcement gap created by the 1968 modification of § 605, which rendered § 605 applicable only to satellite transmissions insofar as they are actual airborne transmissions." Id.

Lastly, the Court distinguished International Cablevision, Inc. v. Sykes, 75 F.3d 123 (2nd Cir. 1996) and instead relied upon United States v. Norris, 88 F.3d 462 (1996). The former advocated a broad reading of section 605 to cover "all satellite-originated transmissions". However, the latter found that "cable television programming transmitted over a cable network is not a 'radio communication' as defined in § 153(b), and thus its unlawful interception must be prosecuted under § 553 and not § 605." TKR Cable, at 206, quoting Norris, 88 F.3d at 469.

Ultimately, the court concluded that "§ 605 encompasses the interception of satellite transmission 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system' and no more." TKR Cable, at 206, quoting H.R. Rep. No. 98-934, at 83, reprinted in 1984 U.S.C.C.A.N. at 4270. Further, "once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.

Following the decision in TKR Cable, the United States District Court for the District of New Hampshire had a case substantially similar to the case at bar. In Kingvision Pay-Per View, Ltd. v. Rocca, 181 F. Supp.2d 29 (D.N.H. 2002), the defendant illegally broadcasted a pay-per view fight involving Evander Holyfield and Michael Moorer on November 8, 1997.

The court engaged in a discussion of sections 553 and 605. The defendants' argued that once the satellite communication was received by the local cable provider and transmitted via cable, its nature changed to a wire communication regulated by § 553. Id. at 32. The Court found that § 605 does not apply because defendants' intercepted a cable transmission. Importantly, the Court, relying on Norris found it was "logical to construe § 605 as applying to radio signals, in this case satellite programming, transmitted through the air, and § 553 as applying to radio communications transmitted via a wire or cable system." Id. at 33, quoting Norris, 88 F.3d. at 466.

Accordingly, in the case at bar, Plaintiff's claim under 47 U.S.C.S. § 605 must fail as they are not cognizable at law according to the Court's decision in TKR Cable.

### 2. Plaintiff has Failed to Properly Plead a Claim for a Violation of 47 U.S.C.S. § 605.

Alternatively, Plaintiff, Entertainment by J & J, Inc., has failed to properly aver how the closed-circuit was being distributed, or whether the defendants' published the cable programming directly from the coaxial cable system or from the satellite transmission. Plaintiff simply states, in conclusory form that it "entered into a closed-circuit license agreement to exhibit the closed-circuit telecast of the [fight]." (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 7.).[3] Accordingly, if this Honorable Court concludes that the analysis of TKR Cable is inapposite to the facts at bar, or that there are not enough facts to be gleaned from Plaintiff's Complaint, the pleadings are insufficient to determine whether sections 605 or 553 are applicable. See Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc., 954 F. Supp. 1046 (E.D. Pa. 1997).

---

[3]Most closed circuit broadcasts use coaxial cables for the transmission of television signals. Rennard Street Enterprises, at 1055, quoting United Artists Television, Inc. v. Fortnightly Corp., 255 F. Supp. at 177, 196. Further, "transmissions of closed-circuit telecasts are electronically scrambled to prevent viewing absent a subscription. When a subscriber purchases viewing rights, the signal is decoded to enable clear reception for viewing. Rennard Street Enterprises, at 1055, quoting Storer Cable Comm. v. Joe's Place Bar & Restaurant, 819 F. Supp. 593, 594 (W.D. Ky. 1993).

There are three (3) opinions stemming from the case of <u>Rennard Street</u>, all by the Honorable Herbert Hutton, a Judge on this Honorable Court.  Factually, <u>Rennard Street</u> involved the transmission of a championship prizefight between Riddick Bowe and Jorge Luis Gonzalez on June 17, 1995.  Plaintiff, Joe Hand alleged that it was granted the right to distribute the fight via "closed circuit television."  Plaintiff further alleged that numerous defendants exhibited the fight without paying.  954 F. Supp. at 1049.  Plaintiff filed suit and alleged a violation of section 605, only.  Defendants' moved to dismiss the complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure for failing to allege facts sufficient to plead a cause of action under section 605.  Defendants' argued that Plaintiff's claims were governed only by § 553.

In the first opinion, Judge Hutton engaged in a lengthy discussion of the "mechanics of the cable television industry."  <u>Id.</u> at 1050.  Judge Hutton examined the legislative histories behind the passage of § 605 and § 553.  Following this discussion, Judge Hutton framed the issue as follows "it is necessary to determine whether that cable television broadcast is a 'radio communication' or a 'wire communication'".  <u>Id.</u> at 1052.  Further, Judge Hutton noted that "[i]f the broadcast is a 'radio communication' because it originated from a satellite transmission, then Section 605 will hold any person who publishes the broadcast liable.  If, on the other hand, the broadcast is a 'wire communication' because it is distributed over a coaxial cable network, then only Section 553 will hold non-communication personnel who publish the broadcast liable.  If, however, the broadcast is both a 'radio communication' and a 'wire communication', then the publisher of the cable broadcast is liable under Sections 553 and 605."  <u>Id.</u> at 1052.  Judge Hutton then discussed the dichotomy created by the decisions in <u>Sykes</u>, *supra* and <u>Norris</u>, *supra*.  Ultimately, he found that "under the Norris court's interpretation, any person who publishes a cable broadcast transmitted through the air without authorization, is liable under Section 605.  [citations omitted]  However, only legitimate communications personnel are liable under Section 605 for publishing a cable broadcast

11

actually transmitted over coaxial cable.  [citations omitted]  Section 553 is the exclusive

remedy for all other persons who publish that cable broadcast."  Id. at 1053-1054.  [citations

omitted].  Finally, Judge Hutton adopted the Norris Court's rationale that:

> because a television signal transmitted through the air is a "radio
> transmission", any person may be held liable under 47 U.S.C. §
> 605 for the unauthorized reception and publication of cable
> programming transmitted through the air.  On the other hand,
> because a television signal transmitted over coaxial cable is a
> "wire communication", only legitimate communication personnel
> may be held liable for publishing a cable broadcast while it is
> actually being transmitted over a system of coaxial cables under
> 47 U.S.C. § 605.  All other persons who publish a cable
> broadcast while it is actually being transmitted over a system of
> coaxial cables, however, may only be held liable under 47
> U.S.C. § 553(a).

Id. at 1054.

After addressing the relevant case-law, Judge Hutton determined that the allegations of

Plaintiff's Complaint did not allege how the "closed-circuit broadcast was being distributed, or

whether the defendants published the cable programming directly from the coaxial cable

system or from the satellite transmission."  Id. at 1054.  The Complaint was insufficient to

state a cause of action under Section 605 and the claim was dismissed.

Following the decision in Rennard I, Plaintiff amended its Complaint and alleged

violations of Section 605.  Again, Defendants' moved to dismiss the Amended Complaint for

failing to state a claim and allege sufficient facts to plead a cause of action.  Rennard Street,

975 F. Supp. 746 (E.D. Pa. 1997).  Plaintiff argued that the fight was not transmitted solely

by way of coaxial cables.  Judge Hutton found that the Complaint pled a sufficient cause of

action under Section 605.  Plaintiff pled that "defendants received the HBO broadcast directly

from a satellite transmission and published the boxing matches to their patrons."  Id. at 751.

[footnotes omitted].  Plaintiff did not plead that "defendants directly received the broadcast

from the coaxial cable network, and published that broadcast in violation of 47 U.S.C. § 553."

Id. at 751.  Judge Hutton noted that it was the plaintiff's choice to proceed with a claim under

12

Section 553.[4]

The final decision in the triad of the <u>Rennard Street</u> case came in June, 1998 when the Court was confronted with a Motion for Summary Judgment which was filed by Defendants. The basis of Defendants' Motion was that "Plaintiffs' could not show defendants' received the boxing match at issue directly from the satellite and not from the coaxial cable network." <u>Rennard Street</u> (III), No. 96-3593, 1998 U.S. Dist. LEXIS 9138, * 10, (E.D. Pa. Jun. 19, 1998). Defendants' argued they did not receive the fight from satellite transmission. Plaintiff did not argue to the contrary and the Motion for Summary Judgment was granted. <u>Id.</u> at 11.

Therefore, it is clear from a review of the relevant case law that Plaintiff's claims that there was a violation of 47 U.S.C. § 605 must fail and the Complaint must be dismissed. Additionally, Plaintiff has not alleged enough facts to proceed with a claim under 47 U.S.C. § 553 as the averments of the Complaint are deficient on its face to state a cause of action under this section.

### C.    STANDING

Defendant submits that Plaintiff lacks standing to pursue a claim under 47 U.S.C. § 553. Plaintiff summarily avers in its Complaint that "Entertainment by J & J, Inc., entered into a closed-circuit license agreement to exhibit the closed-circuit telecast of the November 11, 2000 Championship boxing match . . . ." (<u>See</u> Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 7.). In order to show the fight, the Defendants had to purchase broadcast rights from the Plaintiff. (<u>See</u> Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at ¶ 12.). It is

---

[4]Accordingly, under Judge Hutton's analysis, a Plaintiff would be unable to aver that a broadcast was received directly from a satellite transmission *and* from a coaxial cable network. A fortiori, an election should be made at the time of the filing the Complaint whether a Plaintiff seeks relief under § 605 or § 553, not both. To aver both violations, not only makes little sense it flies in the face of the decisions in <u>TKR Cable Co.</u> and <u>Rennard Street</u> and its progeny.

believed that Plaintiff did not have residential broadcast rights. Further, it is believed that the local cable provider would have had the rights to provide the fight to pay-per view subscribers. It is unknown, however, whether Plaintiff had any contract with the local cable provider to show the fight. See Kingvision Pay-Per-View, Ltd. v. Rocca, 181 F. Supp.2d 29 (D.N.H. 2002)(involving a boxing match which was allegedly purloined by Defendants).

In Rocca, Plaintiff was Kingvision Pay-Per-View, Ltd. who sued various defendants for broadcast of a fight. Plaintiff entered into a licensing agreement with Don King Productions for the exclusive rights to show the fight. Id. at 30. Plaintiff transmitted the fight by "satellite signal to commercial subscribers who received the broadcast by satellite dish or by direct broadcast (DBS) system." Id. "The local cable provider had the rights to provide the fight to residential pay-per-view subscribers." Id.

After finding that Plaintiff could not sustain a claim under § 605, because Defendants' intercepted a cable transmission, the Court addressed Defendants' standing argument with respect to § 553.

As noted above, section 553 allows any "person aggrieved" to bring a civil action. However, where section 605 defines a "person aggrieved", section 553 does not. Section 553 states "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Rocca, at 34, quoting 47 U.S.C. § 553. In Rocca, Defendant argued and the court accepted that because section 553 applies "to cable transmissions, a non-cable provider could not be a 'person aggrieved' entitled to bring suit under the section." Id. at 34. The Court found that it is the "cable operator who is aggrieved when a person intercepts cable without authorization." Id. The Court found support for this conclusion in the legislative history. The Court noted that because "Plaintiff was not a cable operator, nor did it have any contractual or proprietary relationship with [the local cable provider]", it did not have standing to sue. Id. In Rocca, the Court found that the local cable provider would

14

be a "person aggrieved" under § 553. "Congress did not intend to confer standing under § 553 on a plaintiff who is not a cable operator." Id.

In the case at bar, at worst, Plaintiff, Entertainment by J & J, Inc. is not a cable operator and does not have standing to bring a claim under § 553. At best, it is unknown whether Plaintiff is a cable operator as it is not averred in its Complaint. Again, the Complaint should be dismissed for failing to state a claim and failing to confer standing upon Plaintiff for a § 553 violation. Additionally, it is unknown whether Plaintiff has either a contractual and/or proprietary relationship with the local cable provider. See Rocca, *supra*.

### D.    DAMAGES

Plaintiff's claim damages totaling $170,000.00. They seek an Order that the actions of Defendants' were willful. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, A.). They seek statutory damages under section 605(e)(3)(C)(i)(11), in the amount of $10,000.00. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, B.). They seek statutory damages under section 605(e)(3)(C)(ii), in the amount of $100,000.00. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, C.). They seek statutory damages under section 553(3)(A)(ii), in the amount of $10,000.00. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, E.) They seek statutory damages under section 553(3)(B) in the amount of $50,000.00. (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, F.) Finally, they seek full costs and reasonable attorney's fees pursuant to section 605(e)(B)(iii). (See Exhibit "A" - Plaintiff's Complaint, May 21, 2002, at Ad Damnum Clause, D.)

Pursuant to 47 U.S.C.S. § 553(c)(2):

> [t]he court may (A) grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1); (B) award damages as described in paragraph (3); and (C) direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails.

Further section 553(c)(3), states that:

> (A) damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

> (i)     the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

> (ii)    the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

> (B)     In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

> (C)     In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

In contrast section 605(e) provides a different calculus for the tabulation of damages for this sections' violation. Pursuant to § 605(e)(3)(B), the court:

> (i)     may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violation of subsection (a);

> (ii)    may award damages as described in subparagraph (C); and

> (iii)   shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

16

Subsection 605(e)(3)(C)(i) provides for the damages figure(s):

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> (I)    the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II)    the party aggrieved may recover an award of statutory damages for each violation of subsec. (a) involved in the action, in a sum of not less than $1,000 or more than $10,000 as the court considers just and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii)    In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a).
>
> (iii)    In any case where the court finds the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

There are several important issues which must be addressed with reference to Plaintiff's request for damages in its Complaint. Initially, if the section 605 claims are dismissed in the instant motion all of the claims for damages under section 605 must be dismissed as well. See argument, *supra*.

Secondly, curiously Plaintiff does not request the imposition of full costs or reasonable attorney's fees under § 553, rather they argue for its imposition under § 605, therefore any argument of the entitlement to attorney's fees and costs should be stricken, presuming the section 605 claims are dismissed.

17

Thirdly, Plaintiff has not requested the imposition of actual damages, rather they have opted for the imposition of statutory damages presuming they prevail on their claims. Accordingly, Plaintiff should not be heard to argue that the imposition of actual damages is the appropriate quotient for damages.

Further, and assuming *arguendo* that both claims prevail, Plaintiff seeks to cumulate all of the allowable damages under both sections 553 and 605 for a total of $170,000.00 in statutory damages. There is case law to support the proposition that a Plaintiff may not recover under both 47 U.S.C. § 605 and § 553. See King Vision Pay-Per View Corp., Ltd. v. Drencia Restaurant Corp., et al., No. 01-9777, 2002 U.S. Dist. LEXIS 8638, at *5 (S.D.N.Y. May 15, 2002). Therefore, Plaintiff should be forced to make an election under which section they would like to proceed. Naturally, Plaintiff would like to proceed under section 605. However, Plaintiff's choice should not be dispositve as is seen from the foregoing case-law.

## V.    CONCLUSION

Therefore, it is respectfully requested, for all of the foregoing reasons, this Honorable Court grant Defendants' Motion to Dismiss Plaintiff's Complaint.

**GALERMAN TABAKIN & SOBEL**


BY: _____
JONATHAN J. SOBEL, ESQ.
Attorney for Defendant
1420 Walnut Street, Suite 1420
Philadelphia, PA  19102

Dated:        November 27, 2002

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**ENTERTAINMENT BY J & J, INC.**

       **Plaintiff,**

  **v.**

**BRIDGES CAFE**                        **Civil Action No.  02-03006(JF)**
**CORPORATE DEFENDANT**
**d/b/a BRIDGES CAFE**

     **and**

**KEVIN KONIECZNY**

      **Defendants.**

**CERTIFICATE OF SERVICE**

      I, JONATHAN J. SOBEL, ESQUIRE, attorney for Defendants, hereby certify that I am duly authorized to make this certification; that on November 27, 2002, I did cause a true and correct copy of the foregoing *Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)* to be mailed by United States regular mail, postage pre-paid, addressed as follows:

        Ronald J. Harper, Esquire
        **HARPER & PAUL**
        140 West Malpewood Avenue
        Philadelphia, PA  19144

              **GALERMAN, TABAKIN & SOBEL,**

           **BY:** _____
               **JONATHAN J. SOBEL,**
               **Attorney for Defendant**

Dated:        November 27, 2002

November 27, 2002

Clerk's Office
United States District Court - Eastern District of PA
601 Market Street, Room 2609
Philladelphia, PA  19106

        **RE:   Entertainment by J & J, Inc. v. Bridges Cafe**
        **No.:  02-CV-3006(JF)**

Dear Sir / Madam:

      Enclosed please find an original and one copy of *Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)*, in the above matter.  Please file the original and return the copy in the enclosed self-addressed stamped envelope.

      Should you have any questions, please do not hesitate to contact the undersigned.

      Thank you for your anticipated cooperation.

              Very truly yours,



              JONATHAN J. SOBEL

JJS/cl
Enc.

cc:    Ronald Harper, Esquire *(w/enc.)*

20

November 27, 2002

Honorable John Fullam, U.S.D.J.
United States District Court - Eastern District of PA
601 Market Street, Room 15614
Philladelphia, PA  19106

RE:   **Entertainment by J & J, Inc. v. Bridges Cafe**
No.:  **02-CV-3006(JF)**

Dear Judge Fullam:

Enclosed please find an original and one copy of *Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)*, in the above matter.  Please file the original and return the copy in the enclosed self-addressed stamped envelope.

Should you have any questions, please do not hesitate to contact the undersigned.

Thank you for your anticipated cooperation.

Very truly yours,


JONATHAN J. SOBEL

JJS/cl
Enc.

cc:    Ronald Harper, Esquire *(w/enc.)*

21